# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| LYNDON PROPERTY INSURANCE CO., )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>HOUSTON BARNES, INC., *et al.*, )<br>    Defendants. ) | 3:04-cv-174 |

## MEMORANDUM AND ORDER

Plaintiff, Lyndon Property Insurance Company (Lyndon), has moved for partial summary judgment against defendants Grayson and Lisa Houston (the Houstons) [Doc. 16]. Defendants have responded [Doc. 19]. For the reasons that follow, plaintiff's motion is **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

Houston Barnes, Inc. (H-B) was a construction firm with its principal place of business in Knoxville, Tennessee. On April 21, 1994, the Houstons, along with Junior and Kathy Barnes and H-B, entered into a General Agreement of Indemnity (GAI) with Cumberland Surety Insurance Company, Inc. (Cumberland). The parties agree that the GAI was written and executed as part of the consideration for Cumberland to write or procure surety bonds for the benefit of H-B. The parties disagree as to whether the GAI inures to the benefit of Lyndon, from whom it appears Cumberland procured the bonds giving rise to this litigation.

On April 28, 2000, H-B entered into a contract with the City of Knoxville for the re-roofing of Fire Station #16. As a condition of that contract, H-B obtained from Lyndon Performance and Payment Bonds numbered CSB1302909. On May 16, 2000, H-B entered into a contract with Beers/Rentenbach for work on the roof of the Knoxville Juvenile Center. That contract also required Performance and Payment Bonds (CSB3400772), which H-B acquired from Lyndon. The Performance and Payment Bonds identify Lyndon as the surety; Cumberland is not mentioned. Subsequent to Lyndon's issuance of the bonds, H-B defaulted on both contracts. On April 25, 2001, H-B filed a Chapter 7 bankruptcy petition.

Lyndon filed this action on April 19, 2004, seeking indemnification from H-B, the Houstons, and Junior and Kathy Barnes (the Barnes). Service has not been successfully made against the Barnes and H-B is under bankruptcy protection. Thus, Lyndon's motion for partial summary judgment, pertaining strictly to the issue of liability, is filed solely against the Houstons, with Lyndon reserving all rights against the other defendants. As of the date the complaint was drafted, Lyndon claims it has suffered losses of $107,838.54 on the fire station bond and $35,559.18 on the juvenile center bond. There is no dispute that Lyndon issued two sets of bonds and incurred losses as a result of those bonds.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party, in this case the Houstons. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986). The court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505 (1986). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex Corp.*, 477 U.S. at 322.

While there is no dispute that Mr. Houston executed the GAI as an indemnitor, the Houstons argue they are not liable to Lyndon under the GAI. They claim Lyndon is not an intended third-party beneficiary under the GAI. The defendants assert the provision allegedly giving rise to Lyndon's rights under the GAI is ambiguous, unclear, and fails to provide an unequivocal and clear expression by the Houstons to indemnify any party other than Cumberland or to permit a third-party to independently maintain a suit to enforce the indemnification provisions of the GAI. According to the Houstons, the GAI does not state that they sought or would seek sureties other than Cumberland and the GAI does not identify other sureties that would benefit from and under the GAI. The

3

Houstons contend that the GAI, at best, provides that they will not be able to contest an action brought by Cumberland even though Cumberland may seek a co-surety or reinsurer.

Defendants further argue that under the facts of this case, Lyndon acted in bad faith and unreasonably under the GAI and Tennessee law when it paid the bonds on the contracts. Regarding the City of Knoxville contract, the Houstons assert that H-B had performed 70% of all duties required under the contract. Thus, at the time of the default, they argue the cost of any remaining work needing to be performed should not have exceeded $25,000.00. Defendants note, however, that Lyndon's claimed losses exceed the total amount of the construction contract, which was $97,800.00. As to the Beers/Rentenbach contract, the Houstons claim the cost of the tasks remaining to be performed pursuant to the contract should have run only approximately $3,000.00. Therefore, defendants contend that Lyndon unreasonably made overpayments on the bonds at issue. Additionally, the Houstons argue they were not provided any information about or opportunity to dispute any of the claims made by the City of Knoxville or Beers/Rentenbach involving the respective contracts. Defendants further claim they received no information regarding the completion of the contracts and the payments made by Lyndon.

Plaintiff asserts that the language in the GAI is plain, particularly Paragraph 2, where it states the Houstons individually will, *inter alia*,

at all times indemnify and save the Company harmless from and against
every claim, demand, liability, loss, cost, charge, counsel fee, ... expense,
suit, order judgment and adjudication whatsoever, and any and all liability
therefore, sustained or incurred by the Company by reason of having
executed or procured the execution of said bonds or obligations ....

Paragraph 2 further provides that the Houstons will, in the face of any such "claim, demand, liability, loss, cost, charge, counsel fee, ... expense, suit, order judgment and adjudication whatsoever,... place the Company in funds to meet same before it shall be required to make payment."

Lyndon specifically relies on the following language in Paragraph 17: "That all the terms and conditions of this agreement shall stand for the protection of any co-surety, any reinsuring company or any other surety procured by the _____, whether the _____ does or does not execute or retain any portion of such bond or obligation." There is an additional blank in Paragraph 23 of the GAI, which states as follows:

This Agreement may be terminated by the Indemnitor or Indemnitors upon
twenty days' written notice sent by registered mail to the Surety at its
home office at _____ but any such notice of termination shall
not operate to modify, bar, or discharge the Indemnitor or the Indemnitors
as to the Bonds that may have been theretofore executed.

"Surety," as used in Paragraph 23 and in other paragraphs of the GAI, is not defined in the GAI.

Lyndon contends the blanks in Paragraph 17 were intended to contain the word "Company." The Houstons, however, assert the blanks might just as easily have contained a different term, and very well might have been intended to contain "indemnitor," or "surety," or the name of the purported co-surety or reinsurer.

5

Defendants note the other blank in Paragraph 23 could not have contained the word "Company," as it was to contain the location of the "Surety['s]" home office. The Houstons argue it is troubling that Lyndon seeks to insert the word "Company" in Paragraph 17 of the form document when "Company" is otherwise inserted in appropriate areas throughout the GAI.

Lyndon contends the GAI before the court is ordinary in every sense save for the one (two) missing word(s). Plaintiff asserts there cannot be any reasonable interpretation of Paragraph 17 which excludes the protection of the GAI from the benefit of any surety from whom Cumberland procures a bond for the benefit of H-B. Moreover, Lyndon claims that under Paragraph 7, "[t]he Company is hereby authorized to attach hereto a copy of any bond or obligation secured by this agreement, and to fill up any blanks left herein or therein, and to correct any errors in filling up any such blanks or in the descriptions of said bonds or obligations." Accordingly, plaintiff contends that by operation of law, the court may insert the word "Company" into the two blanks found in Paragraph 17. By doing so, Lyndon asserts Paragraph 17 would become consistent with the remainder of the instrument.

Contracts are generally construed by courts in Tennessee to give meaning to all words and phrases in their ordinary sense. *Evco Corp. v. Ross*, 528 S.W.2d 20, 23 (Tenn. 1975). In addition to the plain and ordinary meaning of words utilized within the four corners of the agreement, courts may determine the parties' intention "by a fair construction of the terms and provisions of the contract, by the subject matter to which it

6

has reference, by the circumstances of the particular transaction giving rise to the question, and by the construction placed on the agreement by the parties in carrying out its terms." *Frizzell Const. Co., Inc. v. Gatlinburg,* LLC, 9 S.W.3d 79, 85 (Tenn. 1999); *see also Velsicol Chem. Corp. v. Reilly Ind., Inc.*, 67 F.Supp.2d 893, 905 (E.D. Tenn. 1999). If contract terms are ambiguous, the contractual provisions will be construed against the drafting party. *Marshall v. Jackson & Jones Oils, Inc.*, 20 S.W.3d 678, 682 (Tenn. App. 1999).

In Tennessee, there is no case law to suggest indemnity agreements would be read any differently than regular contracts. Thus, unless the context otherwise requires, indemnity agreements should be applied according to their terms. While the terms of a contract are generally a question of fact, interpretation of the contract is a question of law. *Planters Gin Co. v. Federal Compress & Warehouse Co., Inc.*, 78 S.W.2d 885, 890 (Tenn. 2002). The question of whether a contract was intended for the benefit of a third party is generally regarded as one of construction, and the ascertainment of the intention of the parties to a written contract is a question of law, rather than a question of fact. *Hamblen Co. v. Morristown*, 656 S.W.2d 331, 335-36 (Tenn. 1983).

When seeking indemnification pursuant to a contract, "there must be a clear and unequivocal expression of an intention to indemnify." *First Am. Bank of Nashville v. Woods*, 734 S.W.2d 622, 632 (Tenn. App. 1987). Because the GAI is an indemnification agreement, any obligation of the alleged indemnitors must therefore be clear and unequivocal. If not clear and unequivocal, the language must be construed

7

against Lyndon, the party seeking to enforce the contractual rights of Cumberland. The court is mindful that a general rule of contract construction holds that a mere mathematical, typographical or clerical error will not defeat the manifest intent of the parties if the intent can otherwise be gleaned from the four corners of the contract. *Star v. Union Pacific RR*, 75 P.3d 266 (Kan. App. 2003).

As a general rule, only parties to a contract are entitled to sue to enforce its provisions. Courts generally presume that contracts are "executed for the benefit of the parties thereto," not third parties. *Owner-Operator Indep't Drivers Ass'n Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001). Thus, a non-party seeking to enforce a contract has the burden to prove itself a third-party beneficiary. *First Tennessee Bank Nat'l Ass'n v. Thoroughbred Motor Cars, Inc.*, 932 S.W.2d 928, 930 (Tenn. App. 1996). A third party may enforce a contract if it is an "intended" beneficiary of the contract. *See Moore Constr. Co. v. Clarksville Dept. of Elec.*, 707 S.W.2d 1, 9 (Tenn. App. 1985). However, if the benefit flowing to a third party is merely incidental, the third party has no right to enforce the contract. *Owner-Operator*, 59 S.W.3d at 68.

A In order to maintain an action as an intended beneficiary, a third party must first show: (1) a valid contract made upon sufficient consideration between the principal parties and (2) the clear intent to have the contract operate for benefit of the third party. *First Tennessee*, 932 S.W.2d at 930. In *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 618 (Tenn. 2004), the Tennessee Supreme Court stated:

8

> A third party is an intended third-party beneficiary of a contract, and thus entitled to enforce the terms of the contract, where (1) the parties to the contract have not otherwise agreed, (2) recognition of the third-party's right to performance is appropriate to effectuate the parties' intent, and (3) terms or circumstances indicate that performance of the promise is intended or will satisfy an obligation owed by the promisee to the third party.

*See also Owner-Operator*, 59 S.W.3d at 70. Lyndon claims that if the identity of the third party beneficiary is not discernible at the time the instrument is written, so long as the third party can be identified at the time the obligation arises, then the contract will be enforced in accordance with its terms. *See e.g., Commercial Insurance Co. of Newark, N.J. v. Pacific-Peru Constr. Corp.*, 558 F.2d 948 (9th Cir. 1977); *see also* Restatement (Second) of Contracts § 302 (1981) ["Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ... (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance"].

The language of the GAI is clear that Cumberland anticipated procuring bonds from other sources and that those sources were to be protected by its provisions. Thus, recognizing Lyndon's right to performance by the individual indemnitors is appropriate to effectuate the intent of the parties as expressed in the GAI. The terms of the GAI as well as the circumstances surrounding it indicate that Cumberland, the "promisee" in the GAI, intended to give Lyndon, as "beneficiary," the benefit of the promised performance by the Houstons (*i.e.*, indemnification of any losses incurred).

9

As to the question of reasonableness and good faith by a surety, that is a factual question normally decided by the trier of fact. *Gulf Ins. Co. v. Construx, Inc.*, 2001 WL 840240 at *19 and *20 (Tenn. App. 2001). Thus, whether Lyndon acted unreasonably and in bad faith in paying the bonds presents a genuine issue of material fact.

As to Mrs. Houston, she denies signing the GAI and claims it is ineffective as to her. Lyndon alleges that Mrs. Houston's signature appears on Page 2 and was acknowledged on April 21, 1994; thus, plaintiff argues Mrs. Houston must have signed the GAI.

"[A]n acknowledgment ... is the formal statement of the person signing the document that his [or her] signature was freely done." *In re Marsh*, 12 S.W.3d 449, 453 (Tenn. 2000). An acknowledgment "authenticates the due execution of a document... [and] aids in ensuring that the instrument was not fraudulently executed." *Id.*

Tennessee cases have clarified that a party challenging a written instrument has the burden of proving the invalidity of the writing by a preponderance of the evidence. *See In re Rudd (Drake v. Bank of Troy)*, 28 B.R. 591, 593 (Bankr. W.D. Tenn. 1983) ("While the burden of proof is upon the party seeking to impeach the writing, a preponderance of the evidence is all that is required"). The court finds that genuine issues of material fact exist regarding whether Mrs. Houston signed the GAI. Thus, whether the GAI can be enforced against Mrs. Houston is an issue for the trier of fact.

10

**IT IS SO ORDERED.**

                               **ENTER:**

                               <u>    s/Thomas W. Phillips    </u>
                               **UNITED STATES DISTRICT JUDGE**